IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JOHNNY LACY, JR,

                         Plaintiff,

      v.

SANDRA McARDLE and KENNITH MILLER,

                    Defendants.

OPINION and ORDER

20-cv-1014-jdp

This case brought under the Eighth Amendment is scheduled for trial on July 31, 2023. Plaintiff Johnny Lacy, Jr. is suing defendants Kennith Miller and Sandra McArdle for failing to properly treat an ulcer on his left foot. This order addresses all the pending motions before the court related to evidentiary issues, jury selection, and the appearance of certain witnesses.

ANALYSIS

A. Lacy's motions

1. Exclude Fowlke's expert testimony

Thomas Fowlkes is a physician who has been working in the correctional setting for 24 years. Dkt. 94. His primary opinion is that the medical care that Miller provided Lacy in December 2017 was "reasonable, appropriate, and within the acceptable standard of care." *Id*., Opinion I. That opinion is supported by 13 subsidiary opinions, all of which Lacy challenges as unsupported, irrelevant, or not based on specialized knowledge. The court will consider each opinion in turn.[1]

---

[1] Lacy discusses each subsidiary opinion separately, but much of defendants' response brief is devoted to more general arguments that are not tied to any particular opinion. The court has

Opinion I.1 is that Lacy's diabetes and related conditions were "appropriately diagnosed and managed" before Miller became involved in Lacy's care. That opinion is irrelevant, so the court will exclude it. Lacy isn't challenging the adequacy of his treatment by any previous healthcare providers. Even if the opinion were relevant, it would be inadmissible because it is unsupported. Fowlkes doesn't explain why any prior care was appropriate. In fact, he doesn't identify any specific treatment decisions.

Opinion I.2 is that it is "unsurprising" that Lacy developed "diabetic complications" because he was "poorly compliant with his diabetic treatment." The court will exclude this opinion as irrelevant. It doesn't matter *why* Lacy needed treatment in December 2017; the important question is why defendants made the treatment decisions they did. As Lacy points out, the rule in § 1983 cases, as in tort cases generally, is that the "tortfeasor takes his victim as he finds him." *Richman v. Sheahan*, 512 F.3d 876, 884 (7th Cir. 2008). So neither defendants nor their experts may rely on prior conduct by Lacy to avoid liability or limit their damages.

Opinion I.3 is not an opinion at all; it is a summary of previous treatment that Lacy received:

> Mr. Lacy had multiple episodes of bullae (blisters) on his skin and venous stasis dermatitis with areas of skin that were ulcerated in the months prior to December 2017. These wounds would more appropriately be described as venous stasis dermatitis or diabetic skin infections rather than foot ulcers due to peripheral vascular disease. Mr. Lacy was being followed regularly by podiatry specialists for these chronic lower extremity skin and toenail problems. The podiatry specialists had not found an indication to diagnose Mr. Lacy with peripheral vascular disease (PVD) or refer him to a vascular surgeon.

---

attempted to pair Miller's arguments with specific opinions. If Miller intended to make other specific arguments about Fowlkes's opinions, he forfeited those arguments by failing to clearly articulate them.

Dkt. 94, at 21. A description of Lacy's medical history that is untethered to a disputed issue would not be helpful to the jury, so the court will exclude this opinion.

Defendants appear to construe the above paragraph as an opinion that Miller's treatment in December 2017 was reasonable because it was similar to treatment that Lacy had received in the past for similar symptoms. *See* Dkt. 151, at 12. But that's incorrect for two reasons. First, Fowlkes states that Lacy's situation was *not* the same in December 2017 because the previous "wounds would more appropriately be described as venous stasis dermatitis or diabetic skin infections rather than foot ulcers due to peripheral vascular disease." Second, Fowlkes does not make any comparison in the paragraph between Miller's treatment in December 2017 and any other medical provider's previous treatment, and Fowlkes does not offer an opinion that Miller's treatment was reasonable because it was consistent with previous treatment. If defendants mean to suggest that Fowlkes intends to offer an opinion at trial that Miller's care was reasonable in light of previous treatment decisions by other healthcare providers, the court will exclude that testimony because Fowlkes is bound by the opinions he offered in his report. *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008).

Opinion I.4 is that Miller's December 15 exam and treatment recommendations were "reasonable, appropriate, and within the standard of care." Dkt. 94, at 21–22. But that's just a conclusion. Fowlkes doesn't explain *why* Miller's treatment was reasonable. It's well established that an expert must provide a basis for his opinions. *Downing v. Abbott Laboratories*, 48 F.4th 793, 809 (7th Cir. 2022); *Zamecnik v. Indian Prairie School Dist. No. 204*, 636 F.3d 874, 880-81 (7th Cir. 2011).

Miller defends this opinion on two grounds, but neither is persuasive. First, Miller says that the opinion must be considered in the context of Fowlkes's other opinions, as well as his summary of Lacy's medical history. But Miller points to no other part of the report that provides support for Opinion I.4. And Fowlkes doesn't tie Opinion I.4 to anything in Lacy's medical history. Second, Miller blames any uncertainty about Fowlkes's opinion on Lacy, contending that Lacy should have deposed Fowlkes if Fowlkes's opinions were unclear. But it wasn't Lacy's responsibility to provide Fowlkes with another opportunity to support or clarify his opinions.

Opinions I.5, I.6, and I.7 are about what would be reasonable for Miller to "expect" from nursing staff. Specifically, Miller says that it would be reasonable for a physician in Miller's situation to expect that nurses would comply with his order, perform daily dressing changes, check Lacy's wound, and seek help if Lacy's condition worsened. There are two related problems with that opinion. First, it isn't clear what specialized knowledge Fowlkes is relying on. One does not need to be an expert to know that nurses generally carry out a physician's order. And that isn't the relevant dispute in this case anyway. Rather, the dispute is over whether Miller knew of a risk that his order wasn't clear enough for the nurses to carry out. Fowlkes doesn't address that issue. Second, Fowlkes again doesn't explain the basis for his opinion of what would be "reasonable." Miller is free to testify about what he thought his order meant and why he believed that nurses would implement his order, but Fowlkes's opinion will be excluded.

Opinion I.8 is that it "is unclear why Mr. Lacy reported that he did not change his dressing nor inspect his wound." Dkt. 94, at 22. That statement is neither an opinion nor based on specialized knowledge, so the court will exclude it.

Opinion I.9 is that Lacy's "presentation should not have led a reasonable correctional primary care provider to suspect that" Lacy had a condition that "required urgent referral to a vascular surgeon or any other action besides those which were being undertaken." *Id.* at 23. This is another unsupported, conclusory opinion, so the court will exclude it.

Opinion I.10 is that Miller wasn't notified before December 24 about any problems Lacy had after December 15. *Id.* That is fact testimony, and Fowlkes doesn't have personal knowledge of the relevant facts, so the court will exclude this opinion.

Opinion I.11 is that Miller provided Lacy with "appropriate care" after he returned from the hospital. *Id.* The court will exclude that opinion because it is both conclusory and irrelevant. Lacy's claims aren't based on any treatment he received after returning from the hospital.

Opinion I.12 and I.13 are that Miller's actions were "completely reasonable and within the standard of care" and that there is "no indication in the records" that Miller "denied Mr. Lacy access to care or deliberately failed to provide care." *Id.* The court will exclude these opinions as unsupported and unhelpful to the jury.

Opinion II isn't a separate opinion but instead identifies information that "influence[d]" Fowlkes's opinions. *Id.* Opinions II.1 and II.2 identify "risk factors" that contributed to Lacy's ulcer and "accelerated the development" of his peripheral vascular disease. The court will exclude these opinions as irrelevant. As already discussed, it doesn't matter for the purpose of this case why Lacy developed an ulcer in December 2017. Lacy isn't suing defendants for anything that occurred before December 15, and Miller can't avoid liability with evidence that Lacy or anyone else could have prevented Lacy from developing an ulcer in the first place.

Opinion II.3 is that other medical treatment Lacy received, including treatment for liver cancer, "was well within the standard of care." *Id.* at 24. The court will exclude this opinion as irrelevant. Fowlkes doesn't connect any other care that Lacy received to the treatment decisions at issue in this case.

Opinion III is a collection of responses to the opinions of Lacy's experts, Ryan Herrington and Michael Warshaw. Dkt. 94, at 25–33. Most of these opinions are simply restatements of Fowlkes's original opinions, and they are inadmissible for the same reasons: they are conclusory, irrelevant, or not based on specialized knowledge.

There are two possible exceptions. In Opinion III.5 and III.7, Fowlkes explains why he disagrees with Herrington's opinions that Miller should have tested Lacy's pedal pulses and considered the amount of pain that Lacy was in. Those opinions include minimal reasoning to support the opinion. Neither side discusses the admissibility of either opinion in any detail, so the court will reserve a ruling until the final pretrial conference to allow the parties to be heard.

### 2.  Exclude Dahring's expert testimony

Renee Dahring is an advance practice registered nurse who has 21 years of experience in the correctional setting. Lacy challenges Dahring's opinion that McArdle's response to Lacy's December 17 requests was reasonable.

Dahring's opinion on this issue is sparse. The bulk of the opinion is one paragraph:

> Mr. Lacy's health service requests in December 2017 related to this matter . . . lacked necessary medical information regarding the condition of his toes and instead were focused on diet changes and pain medications. When he did request a visit, such as the request to see his podiatrist, the request was accommodated. Given the context of his requests, the fact that he had been seen by a provider two days prior to making the request and had a plan of care in place, McArdle's actions and medical judgment were appropriate.

Dkt. 81-1, § VII(d). This opinion is conclusory. Dahring says that "McArdle's actions and medical judgment were appropriate" without describing what actions she was referring to or why they were appropriate. She refers to the "context" of Lacy's requests without explaining what she means by that, and she doesn't explain why Lacy's "plan of care" excused McArdle from examining Lacy herself or taking other action. She says that Lacy's request didn't include "necessary medical information," but she didn't describe the type of information he should have included.

Dahring's deposition doesn't clarify her opinion but only confirms that it is unreliable. She was unable to consistently describe the standard she was applying to determine whether Lacy's requests included "medically relevant" information. Dkt. 132-1, at 31:8–39:24. She was unable to say without more information whether it would have been reasonable to give Lacy a prompt appointment on December 18. *Id.* at 75:2–10. She did not know the significance of boxes that Lacy had checked on his request. *Id.* at 78:21–79:15 and 82:24–84:9. She was unable to say whether she would schedule an appointment for a patient who submitted the requests that Lacy did. *Id.* at 80:3–81:15. And she could not clearly articulate how medical staff should have responded to Lacy's interview/information request. She said that "one could certainly argue maybe [the health services unit manager] should have seen" Lacy on December 18, without clearly explaining why a different conclusion would apply to McArdle. *Id.* at 94:2–11.

The bottom line is that Dahring failed to provide a coherent explanation for her opinion that McArdle responded reasonably to Lacy's December 17 requests. The court will exclude that opinion.

The rest of Dahring's report is conclusory, irrelevant, or not based on specialized knowledge. For example, Dahring includes several paragraphs about what she believes McArdle's job responsibilities were and that McArdle was entitled to assume that nurses were following her orders. Dkt. 81-1, §§ VII(e)–(f) and VIII. She also discusses historical facts about Lacy's testimony and the prevalence of Lacy's communications with the health services unit. *Id.*, § VII(h)–(i) and VIII. She includes conclusions that McArdle "did not create any barriers to care," "did not ignore" Lacy, and "responded in a timely manner." None of these opinions would be helpful to the jury, so the court will exclude all of Dahring's testimony.

### 3. Exclude evidence or argument about a "conservative treatment" theory

Lacy seeks to bar defendants from advancing a theory that it was reasonable to provide Lacy with conservative treatment, either because conservative treatment had worked for Lacy in the past or because Miller or McArdle had successfully treated other diabetic sores, blisters, or ulcers with conservative treatment before.

In the summary judgment decision, the court considered defendants' argument that that conservative treatment had worked for Lacy in the past, so it was reasonable for defendants to treat Lacy's ulcer conservatively in December 2017. The court rejected the argument because the Eighth Amendment imposes a subjective standard, and neither defendant pointed to evidence that their treatment decisions in December 2017 were based on past treatment that Lacy had received for blisters. Dkt. 114, at 9, 17.

In their response to Lacy's motions in limine, defendants do not point to any additional evidence that they considered Lacy's or anyone else's past treatment for sores, blisters, or ulcers

when deciding how to treat Lacy in December 2017.[2] And neither defendant contends that they will offer such testimony at trial. Instead, defendants contend that Lacy's past treatment is relevant to show that a "minimally competent professional would have so responded under those circumstances," *Jackson v. Kotter*, 541 F.3d 688, 698 (7th Cir. 2008), which defeats an Eighth Amendment claim.

Miller and McArdle didn't rely on Lacy's past treatment of sores, blisters, or ulcers, so neither defendant may testify about that. The type of testimony that defendants wish to rely on could be offered by an expert to support a finding that defendants didn't consciously fail to provide reasonable treatment to Miller. But defendants don't identify any portions of Fowlkes's or Dahring's reports that offer such an opinion.

The court will grant this motion. Both Miller and McArdle are free to explain why they believed their treatment decisions were appropriate. But they may not rely on information that they did not consider at the time.

### 4. Exclude speculative testimony about nurses' conduct

After Miller examined Lacy on December 15, no nurse examined Lacy's foot until December 24. In their summary judgment submissions, defendants contended that nurses had failed to comply with Miller's order to change Lacy's dressing every day and assess the condition of his foot. The court concluded that a reasonable jury could find that Miller did not

---

[2] Defendants cites several passages from Miller's deposition for the proposition that Miller "had seen numerous diabetic ulcers in his career prior to treating Plaintiff and based on his experience he believed the conservative treatment he was providing might be able to promote healing and life for the diabetic foot ulcer on an outpatient basis." Dkt. 152, at 3 (citing Dkt. 83 at 60:20-61:6, 69:2-70:13, 73:9-22, 76:9-14, 77:9-15, 106:10-21, 112:4-16.). The cited testimony explains why Miller believed his actions were reasonable, but it doesn't explain that Miller's treatment was based on previous conservative treatment that he had provided for other diabetic ulcers.

intend for nursing staff to assess his condition daily because the order was so vague. Dkt. 114, at 13–14.

Lacy moves to bar defendants and their experts from testifying about why none of the nurses checked on Lacy before December 24. The court will grant this motion. No witness without personal knowledge—including defendants, Lacy or any expert—may testify about how nurses actually interpreted Miller's order. An expert could testify about why a reasonable nurse would or wouldn't interpret Miller's order as Miller said he intended it to be interpreted. But neither Fowlkes nor Dahring offers such an opinion in their reports.

Defendant Miller is free to testify about what he intended by writing the order and why he believes his intentions were stated clearly; McArdle is free to testify about how she interpreted the order; and Lacy's counsel is free to cross-examine both witnesses about that testimony.

### 5.  Exclude evidence about Lacy's disciplinary history

Lacy seeks to exclude evidence about his disciplinary history. Defendants don't oppose this motion, but they raise two caveats. First, they say that "the fact that [Lacy] was in restricted housing certainly is" relevant. Dkt. 152, at 9. Defendants don't explain the relevance, but they cite paragraph 122 of Miller's proposed findings of fact, in which Miller says that he could not perform a probe-to-bone test in part because the examination room in segregation didn't have any anesthetic. Dkt. 110, ¶ 122. As the court will discuss in the context of Miller's motion in limine 1, the court is excluding testimony about whether Miller should have conducted tests to detect infection, including the probe-to-bone test. So there is no need for Miller to testify about why he didn't have access to anesthetic. And even if that were a relevant issue, Miller would not need to testify about Lacy's status in segregation. Miller could testify

that no anesthetic was available in the part of the prison where Lacy was housed without identifying the area as segregation.

Second, defendants say that Lacy's "multiple medication overdoses and potential misuse of medications are relevant to the availability of narcotic pain medication to treat his pain on or after December 15, 2017." Dkt. 152, at 9. But Lacy isn't proceeding on a claim that defendants violated the Eighth Amendment by failing to prescribe a stronger pain medication. Rather, Lacy's claim is that defendants refused to order emergency treatment for his foot. So whether defendants could have or should have prescribed stronger pain medication isn't relevant.

The court will grant this motion. Defendants may not offer evidence about Lacy's disciplinary history.

### 6. Exclude arguments appealing to the jurors' self-interest

Lacy seeks an order that bars defendants "from appealing to jurors' monetary or other self-interest." Dkt. 136. Lacy gives the examples of arguing that a money judgment would "raise healthcare costs in prison," "raise insurance premiums for medical providers and also health insurance," or will adversely affect taxpayers. *Id.*

Defendants object to the motion on the ground that it is "too broad," and they ask the court to reserve a ruling to allow the parties to "address the issues at trial if they arise." Dkt. 152, at 9. The court disfavors motions in limine that aren't tied to specific evidence, but there is no need to defer a ruling on this motion because there is no scenario in which it would be appropriate for either side to make an argument based on the effect that a verdict would have on the jurors or any nonparty. The court will grant this motion.

### 7.  Exclude references to dismissed and settled claims

The court will grant this motion as unopposed. Neither side may refer to any of the claims that are no longer in the case or to any of the settlements with the dismissed parties.

### 8.  Limit evidence on prior convictions

Since 1998, Lacy has been serving a lengthy prison sentence for approximately 20 felonies, including sexual assault. The general rule under Federal Rule of Evidence 609(a)(1) is that a felony conviction less than 10 years old is admissible to show credibility unless the probative value of the conviction is substantially outweighed by the danger of unfair prejudice.

Lacy asks that the court limit defendants to asking him whether he "was convicted of a felony." Dkt.  138, at 3. Lacy says that his felony convictions are more than 25 years old, and none of them involved dishonesty, so additional details would be unfairly prejudicial. He relies on *Turner v. Rataczak*, No. 13-cv-48-jdp, 2014 WL 5023095, at *5 (W.D. Wis. Oct. 8, 2014), which limited the defendant to asking plaintiff whether he is "serving a sentence for multiple felony convictions" because additional details would have little probative value and would be unfairly prejudicial. *See also Turner v. Brown*, No. 17-cv-764-jdp, 2019 WL 4640676, at *2 (W.D. Wis. Sept. 24, 2019) (limiting defendants to asking plaintiff "whether he is serving a sentence for a felony conviction").

Defendants do not oppose Lacy's request to omit the nature of his offenses, but they ask to put in evidence of the total number of felony convictions and the total sentence imposed. Defendants don't distinguish or acknowledge *Turner,* so the court will follow the same approach here. The prejudicial effect of evidence that Lacy is serving a long sentence for more than 20 felonies is substantially outweighed by the risk of unfair prejudice, so that information will be

excluded under Rule 403. Defendants may ask Lacy whether he is serving a sentence for multiple felony convictions.

### 9. Conditionally allow evidence of insurance coverage

Lacy asks for permission to introduce evidence that defendants have insurance coverage if defendants "introduce[e] evidence at trial that paying a significant compensatory damages award would present a financial hardship for them." Dkt. 139, at 2. The court will deny this motion as premature. Defendants deny that they will put in evidence or argument about their ability to pay. If that changes during trial, Lacy may renew his motion then.

### 10. Exclude evidence of other lawsuits

The court will grant this motion as unopposed. Neither side may introduce evidence about the parties' other lawsuits. This order does not prohibit either side from introducing otherwise admissible evidence about the underlying facts of previous lawsuits.

### 11. Exclude evidence about Lacy's "uncivil" behavior

Lacy seeks to exclude evidence about three categories of conduct: (1) "impolite" behavior toward prison medical staff; (2) refusals to comply with orders from prison medical staff, both before December 15 and after December 23; and (3) "uncooperative" behavior with medical staff at the hospital.

Defendants don't oppose excluding category (3), so the court will grant that part of the motion as unopposed. As for category (1), defendants contend that Lacy's rude behavior to prison staff could have affected "the care Plaintiff received or McArdle's ability to understand the situation that was presented to her on December 18, 2017." Dkt. 152, at 14. *Id.* But defendants admit that Lacy's behavior "had no impact on how [McArdle] thought he should be treated." *Id.*

13

Defendants also say that Lacy's "habit and routine of prior combative behavior towards health care professionals supports the inference that he acted that way again with Dr. Miller on December 15, 2017." *Id.* at 15. The problem with that argument is that defendants don't cite evidence that Lacy *was* "combative" during Miller's examination. Rather, Miller's position in his summary judgment submissions was that Lacy was reluctant for Miller to touch him because Lacy was in so much pain. Dkt. 110, ¶ 123. Defendants point to no relevant purpose for admitting evidence that Lacy had been rude to prison medical staff in the past, so the court will grant that aspect of the motion.

As for category (2), defendants say that Lacy's refusal to comply with pain treatment in the past is relevant for multiple reasons. First, defendants say that Lacy's past refusal of pain medication shows that Lacy "was in a great deal of pain prior to December 15, 2017." *Id.* Defendants don't explain how the two things are connected, but the court understands defendants to contend that much of the pain and suffering Lacy was experiencing between December 15 and December 24 was the result of conditions other than his foot ulcer, so defendants cannot be held liable for that pain. Defendants are free to present evidence that Lacy's pain and suffering may have been caused by other conditions because that evidence is relevant to damages. But defendants can try to make that showing without evidence that Lacy had refused pain medication in the past. Defendants don't explain how refusing medication in the past shows that Lacy's pain wasn't caused by his ulcer.

Second, defendants say that Lacy's refusal to take pain medication in the past is relevant because McArdle and Miller had referred Lacy to pain specialists in the past. Again, defendants don't explain how the two things are related, and the court cannot discern a connection.

14

Third, defendants say that Lacy's previous refusals to comply with medical staff's orders in the past is evidence that Lacy didn't comply with Miller's instructions about caring for his foot on December 15, such as to protect the bandage and not elevate his foot when he was sitting or lying down. Presumably, defendants' view is that Lacy's pain and suffering would have been lessened had he followed those instructions. This argument isn't persuasive for multiple reasons: (1) this is a subject that would require expert testimony, and defendants don't point to any expert testimony tying Lacy's pain to a failure to follow Miller's instructions; (2) defendants don't explain why the evidence would be admissible under Rule 404(b); and (3) even if the evidence had a purpose other than showing propensity, its probative value is substantially outweighed by the risk of unfair prejudice, so the court would exclude it under Rule 403.

Defendants are free to testify about anything that informed their judgment about how to treat Lacy. But defendants don't explain how any rude behavior or noncompliance in the past affected their treatment decisions. So the court will grant this motion.

### 12. Exclude evidence that Lacy caused his own injuries

Lacy seeks to exclude evidence that his "bad health habits" and his failure to comply with treatment directives contributed to his diabetes and the development of his ulcer. Lacy cites *Santiago v. Lane*, 894 F.2d 218, 224 (7th Cir. 1990), in which the court held in the context of an Eighth Amendment claim that contributory negligence was not a defense because the claim involves reckless conduct. *See also Estate of Moreno by and through Moreno v. Correctional Healthcare Companies, Inc.*, NO: 4:18-CV-5171-RMP, 2019 WL 10733237, at *2–3 (E.D. Wash. Aug. 5, 2019) ("[S]everal federal courts have recognized that the traditional tort

affirmative defenses of comparative fault and contributory negligence . . . do not apply in section 1983 actions.").

Defendants oppose this motion because Lacy's "poor health habits" likely "contributed to [his] pain." Dkt. 152, at 18. But that view is contrary to *Santiago*, and defendants cite no other authority. As already discussed, defendants are free to present evidence that Lacy suffered from conditions other than his ulcer that contributed to his pain between December 15 and December 24. But they may not present evidence that Lacy's past conduct led to his ulcer and therefore contributed to his pain. The court will grant this motion.

### 13. Allow certain witnesses to appear by Zoom

Lacy seeks permission to present the following witness through video conference: experts Ryan Herrington and Michael Warshaw, former DOC employees Jolinda Waterman, Sonya Anderson, and Michael Kemerling, emergency-room physician Christine Langemo, and Lacy himself. Lacy says that the experts would have to travel a long distance to testify in person, some or all of the former DOC employees are more than 100 miles from the courthouse, and the physician's testimony will be limited, so requiring her to travel to the courthouse doesn't make sense. As for Lacy himself, Lacy says that he plans on attending the trial, but his health issues may make it difficult or dangerous to travel. Defendants did not respond to the motion.

The court will grant this motion. Lacy's counsel is directed to contact the clerk's office to make arrangements for each witness to testify by Zoom. It will also be counsel's obligation to make arrangements with prison staff in the event that Lacy is unable to travel. Lacy's counsel is directed to notify both the court and defense counsel immediately if Lacy decides that he will not be appearing in person. Both sides are directed to provide any witness appearing remotely with any exhibit that the witness may need to view during direct or cross examination.

### 14. Jury selection requests

Lacy makes three requests regarding jury selection: (1) empanel 12 jurors; (2) allow counsel an hour to question potential jurors; (3) refrain from "attempt[ing] to rehabilitate any potential juror with leading questions." Dkt. 115.[3] The court will deny each of these requests. As for the first two requests, Lacy hasn't persuasively explained why the court should depart from its standard practices.

As for Lacy's third request, Lacy says that "[o]nce a potential juror admits or comes close to admitting bias, . . . the law should not trust him." *Id.* at 115. But Lacy doesn't explain what qualifies as "admitting bias" or a "leading question." If Lacy believes that any juror should be struck for cause based on an admission of bias, he is free to make that argument to the court during jury selection.

### 15. Jury instruction regarding Miller's absence

As the court will discuss in the context of defendants' motions in limine, Miller will not be attending the trial. As a result, Lacy asks the court to include the following jury instruction:

> Defendant Kennith Miller will not be present at trial. You will see video recordings of his testimony. You are not to speculate as to why Defendant Miller is absent. His absence is irrelevant to the issues you must decide and it should not influence your decisions or how you view the evidence.

Dkt. 157, at 2.

The court will grant this motion, but the court will draft its own language to include in the introductory instructions. As Lacy's proposed instruction is framed, the instruction could have the opposite of its intended effect by drawing more attention to Miller's absence.

---

[3] Lacy also asked to disseminate a questionnaire to potential jurors, but the court denied that request. Dkt. 116.

## B. Defendants' joint motions

### 1. Exclude references to William Ledford

This motion is granted as unopposed. Neither side may refer to former plaintiff William Ledford for any reason.

### 2. Exclude testimony from Michael Warshaw that Miller used the Wagner Scale

Defendants call this motion a request to "bar witnesses from opining about the credibility of other witnesses." Dkt. 150, at 2. But the only example defendants provide is testimony from Warshaw that "that Dr. Miller lied about the grading scale he used when examining Plaintiff's ulcer on December 15, 2017." *Id.* at 3. The court will grant this motion as unopposed.

### 3. Exclude evidence or argument about defendants' licensure or employment after December 24, 2017

The court will grant this motion as unopposed. Neither side may discuss what happened with either defendant's licensure or employment after December 24, 2017.

### 4. Allow defendants to ask Lacy questions about his criminal convictions

The court addressed this issue in discussing Lacy's motions in limine. Defendants may ask Lacy whether he is serving a sentence for multiple felony convictions. The court will otherwise deny the motion.

### 5. Exclude evidence or argument about Lacy's amputation

The court concluded in its summary judgment decision that Lacy failed to adduce evidence that his amputations could have been prevented if he had received emergency treatment on December 18 (when McArdle first learned about Lacy's ulcer) or on December 15 (when Miller first learned about Lacy's ulcer). Based on the court's ruling, defendants ask

the court to bar Lacy from making an argument or presenting evidence that defendants' conduct caused any of his amputations.

Lacy doesn't oppose the motion as framed by defendants, so the court will grant the motion. But Lacy says that he opposes excluding "the fact of the amputations" for three reasons: (1) the amputations suggest that Lacy's medical need was serious; and (2) the amputations may "shed light on the severity of the pain Lacy suffered during the relevant period"; and (3) Lacy cannot hide his missing leg from the jury. None of these are persuasive reasons for admitting evidence about Lacy's amputations. Dkt. 156, at 5.

As for the first reason, it is not enough for Lacy to prove that he had a serious medical need; rather, he must show that defendants *knew* (or strongly suspected) he had a serious medical need. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). That determination must be made based on the evidence available to defendants at the relevant time, which is December 15 for Miller and December 18 for McArdle. Obviously, neither defendant knew then that Lacy's toes, foot, or part of his leg would be amputated.

As for the second reason, Lacy would need expert testimony to draw a connection between the amount of pain he suffered and the fact of his amputations. Neither of Lacy's experts draw such a connection in their reports.

As for the third reason, Lacy is correct that his amputation will be obvious if he appears in court. But that isn't a reason to allow in evidence about the amputations. Rather, it suggests that a jury instruction is needed to explain to the jury that the status of Lacy's left leg is not relevant for any purpose in this case. Surprisingly, neither side proposed such an instruction. The court will give both sides an opportunity to do so before trial. If Lacy testifies remotely, then even the fact of his amputations need not be revealed to the jury.

**6.  Exclude argument that Lacy's pain medicine prescriptions were inadequate**

Lacy says that he "has no intention of arguing that Miller or McArdle should have provided him opioid medication in the prison setting." Dkt. 156, at 5. This makes sense because, as already discussed, Lacy is not proceeding on a claim that either defendant violated the Eighth Amendment by failing to prescribe stronger medicine. Nevertheless, Lacy says that he wants to present evidence that "acetaminophen [which Miller prescribed for Lacy] was unsafe for his liver." *Id.* But this case isn't about Miller's treatment of Lacy's liver, so that issue is irrelevant. The court will grant this motion. Lacy may not present evidence or make an argument challenging defendants' decisions regarding the medication they prescribed him.

**7.  Exclude photos of Lacy's left foot**

The court will grant this motion as unopposed. The parties may not introduce photos of Lacy's foot taken on December 24, 2017.

**8.  Exclude evidence or argument about other lawsuits**

As with Lacy's motion on the same issue, the court will grant this motion as unopposed.

**9.  Exclude evidence or argument about future pain and suffering**

Defendants seek to exclude evidence about Lacy's future pain and suffering, primarily on the ground that he doesn't have expert testimony to support future damages.[4] Defendants rely on Wisconsin case law requiring expert testimony to support a claim for future pain and suffering. *See Ianni v. Grain Dealers Mut. Ins. Co.,* 42 Wis. 2d 354, 362, 166 N.W.2d 148, 152

---

[4] Defendants also rely on the summary judgment decision, which defendants interpret as precluding damages on future pain and suffering. The court's ruling was that Lacy's compensable harm is limited to the pain and suffering caused by defendants' delay in seeking emergency treatment for Lacy. Lacy is correct that the court didn't consider whether he could recover for emotional harm that continued after December 24.

(1969) ("As to future pain and suffering, the rule in this state is that a nonmedical witness is incompetent to express an opinion as to how long pain will be projected into the future."). They also cite Seventh Circuit Pattern Jury Instruction 7.26, which states that future pain and suffering may be awarded only if it is "reasonably certain" that the harm will occur.

Lacy doesn't oppose this motion as it relates to his physical pain and suffering. But he says that "his emotional distress continued [after December 24], and it continues. Plaintiff is, was, and will be until he dies at the mercy of prison medical providers like Miller and McArdle to manage his many serious ailments. That Miller and McArdle ignored him once, causes Plaintiff to fear that it will happen again." Dkt. 156, at 6.

A jury may or may not find Lacy's proposed testimony persuasive, but the court will not bar Lacy from giving that testimony. Lacy is proceeding under the Eighth Amendment only, and defendants cite no federal rule that would prohibit Lacy from testifying about his own future mental state. "[E]xpert testimony is not required if lay testimony forms a sufficient basis for the jury to consider a claim based on future pain and suffering." *See Bursley v. Surane,* No. 04 C 7386, 2006 WL 1120577, at *2 (N.D. Ill. Apr. 26, 2006). That is the case here. Lacy may not diagnose himself with a mental health condition, but he may rely on his own past experience to predict how he is likely to feel for the foreseeable future, so long as those feelings are the direct result of defendants' delay in treating him, and not the loss of part of his left leg. The court will deny this motion as it relates to future emotional distress caused by the delay in receiving care in December 2017.

### 10. Prohibit Lacy from offering expert testimony

The court will grant this motion as unopposed. Lacy may not provide medical opinions about his health conditions; he may testify about what happened and how he feels.

### 11. Prohibit "golden rule" arguments

The court will grant this motion as unopposed. Neither Lacy nor his counsel may ask the jurors to put themselves in his position for the purpose of determining damages or for any other reason.

### 12. Exclude "undisclosed or improperly disclosed" evidence

Defendants ask the court to exclude any evidence that Lacy failed to disclose in accordance with Rule 26. The court will deny this motion without prejudice because defendants don't identify any evidence they wish to exclude. There is no point in issuing a ruling that the parties must comply with the Federal Rules of Civil Procedure. If defendants believe that any of Lacy's exhibits weren't properly disclosed, they may raise that issue during the final pretrial conference.

### 13. Exclude evidence or argument about insurance or defendants' ability to pay

The court will grant this motion. If defendants introduce any evidence or argument suggesting that they are unable to pay a judgment, Lacy may ask the court to revisit the issue.

### 14. Exclude evidence from third parties about Miller and McArdle's state of mind

The court will grant this motion in part and deny it in part. No witness may testify about what another person was thinking without personal knowledge. But any witness is free to testify about what they saw or heard a person do or say, even the observation is suggestive of the person's state of mind.

### 15. Limit damages arguments

Defendants seek to bar Lacy from asking the jury to "base any award of damages outside the scope of the claims limited by the Court's Summary Judgment Order." Dkt. 150, at 18. The court will grant this motion as unopposed. Lacy's potential damages are limited to the

physical and mental pain and suffering that Lacy experienced as a result of defendants' delay in seeking emergency treatment for him.

### 16. Exclude evidence that Miller or McArdle were responsible for staffing, training, or supervising nurses

The court will grant this motion and preclude either side from offering evidence about Miller and McArdle's responsibility for staffing, training, or supervising because that issue is simply irrelevant. There is only one issue related to the nurses that is relevant to trial, and that is whether Miller or McArdle knew of a strong likelihood that nurses were not assessing Lacy's condition after December 15. Lacy is not suing either defendant for negligence, so it doesn't matter whether defendants *should have* done more to ensure that a nurse would examine Lacy's foot. Evidence about defendants' responsibilities for staffing, training, or supervising could be relevant only to the extent that it showed that defendants knew that the nurses weren't carrying out their duties. But neither side contends that it has evidence about whether the nurses were complying with any training or supervision that defendants provided.

This ruling applies to both sides. Neither defendants nor their experts may testify about the extent of defendants' responsibilities to staff, training, or supervise the nurses. If Lacy cannot put in evidence about those issues, then there is no need for defendants to do so either.

### 17. Exclude evidence that McArdle was responsible for carrying out Miller's orders

Defendants call this motion a request to "bar any suggestion that McArdle was responsible for performing tasks outside of the scope of her responsibilities as a Nurse Practitioner," Dkt. 150, at 20, but the only example they identify in their motion relates to whether McArdle was responsible for ensuring that nursing staff complied with Miller's orders from December 15, 2017. The court will grant this motion for the same reason that it granted

23

the previous motion: it doesn't matter what McArdle was responsible for; it matters what she knew or suspected about the treatment Lacy was or wasn't receiving.

### 18. Exclude evidence about defendants' conduct after December 24, 2017

The title of this motion is misleading because it isn't limited to defendants post-December 24 conduct; defendants also seek to exclude Lacy's December 23 health services request on the ground that neither defendant saw it.

Lacy opposes this motion, but he doesn't explain why defendants' conduct after December 24 is relevant. Nothing that defendants did after that date is part of Lacy's claim, so the court will grant that part of the motion.

As for the December 23 health services request, Lacy says that it is relevant regardless of who saw it because it includes allegations about Lacy's pain. Although the request is hearsay, Lacy says that it is admissible as a present-sense impression under Rule 803(1) or a statement of his emotional, sensory, or physical condition under Rule 803(3).[5]

The requirements for admissibility under 803(1) and 803(3) are similar.[6] Lacy submitted the request during the time he says he was in pain, and Lacy's pain is a relevant issue in the case, so the request meets those requirements of the rules. But it is less clear whether

---

[5] Lacy makes the same argument regarding a December 23 grievance that he submitted. Dfts.' exh. 513. Defendants don't discuss that grievance in their motion, but the admissibility of the grievance likely rises and falls with the admissibility of the health service request.

[6] Rule 803(1) has three elements: (1) the statement describes an event or condition without calculated narration; (2) the speaker personally perceived the event or condition described; and (3) the statement was made while the speaker was perceiving the event or condition, or immediately thereafter. *U.S. v. Boyce*, 742 F.3d 792, 797-98 (7th Cir. 2014). Rule 803(3) also has three elements: (1) the statement was contemporaneous with the mental state sought to be proven; (2) the declarant had no time to reflect, that is, no time to fabricate or misrepresent his thoughts; and (3) the declarant's state of mind is relevant to an issue in the case. *U.S. v. Neely*, 980 F.2d 1074, 1083 (7th Cir. 1992).

Lacy meets other requirements, which are that he made the statement without "calculated narration" or without enough time to fabricate his statement. "The act of letter writing usually provides as much time as the writer might want to fabricate or misrepresent his thoughts' so the 803(3) exception generally does not apply." *United States v. Harris*, 942 F.2d 1125, 1130 n.5 (7th Cir. 1991).

Neither side addressed whether the December 17 communications meet all the elements under Rule 803(1) or (3), so the court will reserve a ruling. The parties should be prepared discuss the issue during the final pretrial conference, providing relevant authority in support of their positions.

### 19. Exclude evidence or argument that defendants' conduct was motivated by racism

The court will grant this motion as unopposed. Lacy may not speculate that defendants' treatment decisions were a result of racist beliefs.

### 20. Prohibit Lacy's counsel from asking defendants about sympathy or remorse[7]

The court will deny this motion. Lacy is seeking punitive damages against defendants. The purpose of punitive damages is to punish and deter the defendants, and among the factors the jury may consider in deciding whether to award punitive damages is "the likelihood that Defendant would repeat the conduct if an award of punitive damages is not made." Seventh Circuit Pattern Jury Instruction 7.28. The presence or lack of sympathy or remorse could inform that determination.

---

[7] Defendants' brief is missing a motion in limine 20 and has two motions in limine 23. The court has renumbered the motions so that they are in sequential order.

**21. Require Lacy to choose one liability expert to testify**

Lacy has two experts who offered opinions about the standard of care for treating Lacy in December 2017: Ryan Herrington and Michael Warshaw. Defendants contend that the two experts offer the same opinions, so the court should exclude one of them as cumulative.

The court will deny this motion. There is some overlap in the opinions offered by Herrington and Warshaw, but they each provide a different perspective. Herrington is a general practice physician with experience in correctional medicine and Warshaw is a practicing podiatrist, so they provide different insights.

That being said, the court will not allow two experts to offer the same opinions and the same reasoning. Lacy says that he will "conduct tight, focused exams of his experts with as little overlap as possible," Dkt. 156, at 11, but he does not explain how he will do this. Lacy should be prepared during the final pretrial conference to explain how each expert's testimony will be different and how he will prevent the experts from providing cumulative testimony.

**22. Exclude Warshaw's testimony**

Michael Warshaw is a practicing podiatrist with more than 40 years of experience. Dkt. 97, at 3. He offers opinions about the appropriate treatment of diabetic foot ulcers generally and about why he believes that defendants' assessment and treatment of Lacy in December 2017 was unreasonable.[8]

Defendants challenge Warshaw's opinion on four grounds. First, they say that Warshaw isn't qualified because he doesn't practice in the correctional setting. But defendants neither explain how the correctional setting is relevant to the treatment decisions in this case nor cite

---

[8] Warshaw also offered opinions on causation, but the court excluded those opinions in the summary judgment decision, and Lacy concedes that they may not be offered at trial.

any authority that expertise in correctional medicine is required. Warshaw has significant experience in assessing and treating diabetic foot ulcers, and that is sufficient for Rule 702.

Second, defendants contend that Warshaw applied the wrong standard because he assumed that anything other than "best practices" violated the standard of care. But Warshaw's report says nothing about "best practices." It was defense counsel that introduced that concept during Warshaw's deposition. Warshaw answered "yes" when counsel asked him whether he would consider the standards he described in his report as "essentially . . . best practices." Dkt. 88, at 142:6–11. Warshaw then answered "yes, I factored it in" when counsel asked him, "was it sort of with that in mind, best practices, that you evaluated the conduct of Nurse McArdle as it relates to your report?" *Id.* at 12–15. The meaning of both counsel's question and Warshaw's answer is unclear. Defendants are free to cross examine Warshaw about this issue at trial, but nothing in Warshaw's report suggests that he is applying a heightened standard of care, so the court declines to exclude Warshaw's opinion on that ground.

Defendants' third objection is that Warshaw "backed-in to his opinion," meaning that he concluded that McArdle's treatment must have been inadequate simply because Lacy's foot had to be amputated later. Again, that opinion is not in Warshaw's report. Defendants' argument is based on a portion of Warshaw's deposition testimony in which Warshaw said that Lacy could have had a "better outcome" if McArdle had examined Lacy herself on December 18. *Id.* at 70:22–71:14. That testimony is about causation, which the court has already held Warshaw may not testify about. Warshaw was not giving an opinion in that portion of his deposition about why McArdle's treatment was unreasonable.

Fourth, defendants include one sentence in their brief that Warshaw's opinion "does

27

not address pain management at all, . . . and that is the only issue to be tried." Dkt. 150, at 31. Presumably, defendants mean to contend that Warshaw's opinion is irrelevant because it doesn't address pain management. But this misunderstands the issues being tried. Lacy hasn't asserted a claim that defendants violated his Eighth Amendment rights because they made obviously incorrect choices about how to manage his pain. Rather, he is proceeding to trial on a claim that defendants knew of a strong likelihood that Lacy needed emergency treatment and had they provided such treatment, Lacy's pain would have been lessened. Warshaw's testimony is relevant to that issue.

> 23. **Prohibit Herrington from testifying about the foresight test, substitution test, and mitigating circumstances test and about his opinions on safety.**

The court will grant this motion as unopposed. Herrington may not testify about any of these topics.

## C. Miller's motions

> 1. **Exclude evidence or arguments that Miller should have performed tests to detect possible infection.**

Lacy's experts say that Miller should have performed tests on December 15 to determine whether Lacy had an infection, including a probe-to-bone test. The court declined to consider that issue in the summary judgment decision because there was no evidence that Lacy had an infection at the time, and Lacy didn't identify how either test would have made a difference to Lacy's condition. Dkt. 114, at 8 n.4. Miller now asks the court to exclude expert testimony about a failure to take tests to detect infection on the same ground.

Lacy opposes the motion, but not on the ground that he has evidence that he was suffering from an infection on December 15 or that testing for an infection would have provided any benefit to him. Rather, Lacy contends that *any* failure by Miller during his

examination of Lacy is relevant to showing that Miller's treatment was "a substantial departure" from acceptable practice. That is one of the ways that a plaintiff can show the third element of an Eighth Amendment claim, which is that the defendant consciously failed to take reasonable measures to help the plaintiff. Federal Civil Jury Instructions of the Seventh Circuit § 7.17 (2017).

But Lacy's argument disregards the fourth element of an Eighth Amendment claim, which requires the plaintiff to show that the defendant's conscious failure caused the plaintiff harm. The question for trial isn't whether Miller was a bad doctor generally or whether he used poor judgment in the abstract; rather, the question is whether Miller knew of a risk to Lacy's health and Miller's conscious failure to act reasonably harmed Lacy. It is well established under the Eighth Amendment that there must be a causal connection between the risk that the defendant disregarded and the harm to the plaintiff. *See Langston v. Peters*, 100 F.3d 1235, 1238 (7th Cir. 1996).

The only harm at issue now is the pain and suffering that Lacy experienced because defendants refused to seek emergency care for Lacy. Performing a test for an infection that did not in fact exist would not have led to faster care or otherwise lessened Lacy's pain. The court will grant this motion.

### 2.  **Declare Miller unavailable as a witness**

Defendants move under Federal Rule of Civil Procedure 32(a)(4)(C) to introduce Miller's deposition at trial in lieu of live testimony because Miller is not available. Defendants have submitted the declaration of Miller's spouse, who says that Miller suffered a stroke in August 2022, and he now has dementia, along with multiple other physical and cognitive disabilities. Dkt. 119. She attaches the results of a mental health examination that showed

"significant [cognitive] decline." Dkt. 119-2, at 6. The court will grant this motion as unopposed.

### 3.  Exclude evidence about Waterman's concerns about Miller

Miller seeks to exclude as irrelevant testimony about Miller from Jolinda Waterman, who was the manager of the health services unit in 2017. Waterman testified in her deposition about two problems that she had with Miller. First, he failed to fill out necessary paperwork for referrals. Dkt. 84, at 54:22–55:21. Second, "some of the things he was writing were not policy and procedure." *Id.* at 55:21–22. As an example, she stated that Miller would order a snack bag for a prisoner without explaining why it was needed. *Id.* at 55:22–56:11. Waterman also said that she "had to just call Madison [about Miller], and actually the medical director actually came and visited the site, talked with the provider." *Id.* at 54:11–13.

Lacy says that Waterman's testimony about her concerns with Miller is relevant for two reasons. First, it undercuts Miller's testimony that he believed that his orders to the nurses regarding Lacy's care were clear. Second, it impeaches Miller's testimony that "Waterman never brought a supervisor out from Madison to talk to Miller about the quality of his care and, in particularly, his 'charting' and 'paperwork.'" Dkt. 156, at 3.

Waterman's concern that Miller was not filling out referral forms has nothing to do with this case. Lacy is not alleging that he was denied care because of a failure by Miller to complete paperwork for a referral. So the court will exclude that testimony.

As for Waterman's other concern that Miller was not following "policy and procedure," it isn't clear what Waterman meant. In the example she gave, Waterman appears to be saying that Miller's orders for snack bags weren't clear enough. The court understands Lacy's argument to be that Waterman's testimony suggests that Lacy had notice before December 15

that he needed to be clearer in his orders, so the testimony undermines Miller's testimony that he believed that his ambiguous December 15 order was actually clear.

If Waterman or anyone else informed Miller before December 15 that his orders weren't clear enough, that could be relevant evidence to show that he that knew his December 15 order wasn't clear either, which is an issue in dispute. But the problem is that Waterman's testimony also lacks clarity. She doesn't specifically identify what she or the medical director told Miller the problems were. An unexpressed concern could not give notice to Miller. And Miller expressly denied that Waterman or any department supervisor came to him with concerns about his charting. Dkt 82, at 28:6–29:12.

The court will conditionally deny Miller's motion as it relates to any concerns by Waterman that Miller's orders were vague. Lacy's counsel may ask Waterman whether she or anyone else in her presence informed Miller that his orders were not clear enough. If she says no, counsel may not ask follow-up questions. If she says yes, counsel may ask what she or the other person said Miller about that issue.

As for the question whether Waterman's testimony is proper impeachment evidence, the answer depends on how Waterman answers the question whether a supervisor admonished Miller about vague orders in Waterman's presence. If Waterman did not hear a supervisor express that concern to Miller, then any testimony about whether a supervisor admonished Miller for a different reason is simply irrelevant, and there's no reason for either Waterman or Miller to testify about the issue. A party may not put in evidence on a collateral matter simply to show that a witness is lying about that matter. *U.S. v. Jackson*, 540 F.3d 578, 587–88 (7th Cir. 2008).

ORDER

IT IS ORDERED that:

1. Johnny Lacy, Jr.'s motion to exclude the testimony of Thomas Fowlkes, Dkt. 131, is RESERVED on Opinions III.5 and III.7. The motion is GRANTED in all other respects.

2. Lacy's motion to exclude the testimony of Renee Dahring, Dkt. 132, is GRANTED.

3. Lacy's motion to exclude testimony about a "conservative treatment" theory, Dkt. 133, is GRANTED. Defendants may not rely on information that they did not consider when treating Lacy in December 2017.

4. Lacy's motion to exclude testimony speculating about the nurses' conduct, Dkt. 134, is GRANTED. No witness without personal knowledge may testify about how nurses actually interpreted Miller's order.

5. Lacy's motion to exclude evidence about his disciplinary history, Dkt. 135, is GRANTED.

6. Lacy's motion to exclude arguments appealing to the jurors' self-interest, Dkt. 136, is GRANTED.

7. Lacy's motion to exclude references to dismissed and settled claims, Dkt. 137, is GRANTED.

8. Lacy's motion to limit evidence about his prior convictions, Dkt. 138, is GRANTED. Defendants may ask Lacy whether he is serving a sentence for multiple felony convictions, but they may not present evidence about the nature of his convictions, the precise number of convictions, or the sentence he received.

9. Lacy's motion to conditionally allow evidence about defendants' insurance, Dkt. 139, is DENIED without prejudice.

10. Lacy's motion to exclude evidence of other lawsuits, Dkt. 140, is GRANTED.

11. Lacy's motion to exclude evidence about his "uncivil" behavior, Dkt. 141, is GRANTED.

12. Lacy's motion to exclude evidence and argument about contributory negligence, Dkt. 142, is GRANTED.

13. Lacy's motion to allow certain witnesses to appear by Zoom, Dkt. 144, is GRANTED.

14. Lacy's motion regarding jury selection, Dkt. 115, is DENIED.

15. Lacy's motion for a jury instruction on Miller's absence, Dkt. 157, is GRANTED.

16. Defendants' motion to exclude references to William Ledford, Dkt. 150, is GRANTED.

17. Defendants' motion to exclude testimony by Warshaw that Miller used the Wagner Scale, Dkt. 150, is GRANTED.

18. Defendants' motion to exclude evidence about defendants' licensure or employment after December 24, 2017, Dkt. 150, is GRANTED.

19. Defendants motion to allow evidence about Lacy's criminal convictions, Dkt. 150, is GRANTED in part and DENIED in part. Defendants may ask Lacy whether he is serving a sentence for multiple felony convictions, but they may not present evidence about the nature of his convictions, the precise number of convictions, or the sentence he received.

20. Defendants' motion to exclude evidence about Lacy's amputations, Dkt. 150, is GRANTED. The parties may have until July 21, 2023, to submit a proposed jury instruction about the amputations.

21. Defendants' motion to exclude argument that Lacy's pain medication prescriptions were inadequate, Dkt. 150, is GRANTED.

22. Defendants' motion to exclude photographs from December 24, 2017, of Lacy's left foot, Dkt. 150, is GRANTED.

23. Defendants' motion to exclude evidence and argument about other lawsuits, Dkt. 150, is GRANTED.

24. Defendants' motion to exclude evidence and argument about future pain and suffering, Dkt. 150, is GRANTED as to physical pain and suffering, and DENIED as to mental pain and suffering.

25. Defendants' motion to preclude Lacy from offering expert testimony, Dkt. 150, is GRANTED.

26. Defendants' motion to prohibit "golden rule" arguments, Dkt. 150, is GRANTED.

27. Defendants' motion to exclude undisclosed or improperly disclosed evidence, Dkt. 150, is DENIED without prejudice.

28. Defendants' motion to exclude evidence or argument of their ability to pay, Dkt. 150, is GRANTED.

29. Defendants' motion to exclude testimony about a witness's state of mind, Dkt. 150, is GRANTED in part and DENIED in part. No witness may testify about what another person was thinking without personal knowledge. But any witness is free to

testify about what they saw or heard a person do or say, even the observation is suggestive of the person's state of mind.

30. Defendants' motion to limit damages evidence and arguments, Dkt. 150, is GRANTED. Lacy's potential damages are limited to the physical and mental pain and suffering that Lacy experienced as a result of defendants' delay in seeking emergency treatment for him.

31. Defendants' motion to exclude evidence about defendants' responsibility for staffing, training, or supervising nurses, Dkt. 150, is GRANTED. Neither side may testify about the extent of defendants' responsibilities to staff, train, or supervise the nurses.

32. Defendants' motion to exclude evidence that McArdle was responsible for carrying out Miller's orders, Dkt. 150, is GRANTED.

33. Defendants' motion to exclude evidence about Lacy's December 23, 2017 communications and any conduct by defendants after December 24, Dkt. 150, is GRANTED as to defendants' conduct after December 24. The court reserves a ruling on Lacy's December 23 communications.

34. Defendants' motion to exclude evidence or argument that defendants' conduct was motivated by racism, Dkt. 150, is GRANTED.

35. Defendants' motion to exclude evidence or argument about defendants' sympathy or remorse, Dkt. 150, is DENIED.

36. Defendants' motion to exclude as cumulative one of Lacy's expert witness, Dkt. 150, is DENIED. But Lacy should be prepared during the final pretrial conference to explain how he will limit potential cumulative testimony from the two experts.

37. Defendants' motion to exclude Warshaw's testimony, Dkt. 150, is DENIED.

38. Defendants' motion to prohibit Herrington from testifying about the foresight test, substitution test, and mitigating circumstances test and about his opinions on safety, Dkt. 150, is GRANTED.

39. Miller's motion to exclude evidence or argument about his failure to conduct tests for infection, Dkt. 118, is GRANTED.

40. Miller's motion to allow his deposition testimony to be used at trial, Dkt. 118, is GRANTED.

41. Miller's motion to exclude testimony about Waterman's concerns about Miller, Dkt. 118, is GRANTED in part and DENIED in part. Lacy's counsel may ask Waterman whether she or anyone else in her presence informed Miller that his orders were not clear enough. If she says no, counsel may not ask follow-up

34

questions. If she says yes, counsel may ask what she or the other person said Miller about that issue.

Entered July 18, 2023.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge